UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JERRY L. EARNEST,<br><br>    Plaintiff,<br><br>v.<br><br>BOARD OF EDUCATION OF JASPER COUNTY COMMUNITY UNIT SCHOOL DISTRICT NO.1; ANDREW D. JOHNSON, Superintendent; Board of Education Members: JON FULTON, President; GORDON MILLSAP, Vice President; HOLLY FARLEY, Secretary; MANDY RIEMAN; MELISSA STANLEY; and ROB STREET,<br><br>    Defendants. | Case No. 17-cv-1380-JPG-SCW |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on the defendants' motion to dismiss plaintiff Jerry L. Earnest's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim (Doc. 23). Earnest has responded to the motion (Doc. 28), and the defendants have replied to that response (Doc. 29).

**I.    Background**

Earnest, an elected member of the Board of Education of Jasper County Community Unit School District No. 1 ("Board"), first filed this lawsuit in December 2017. In it, he claims that the defendants deprived him of a liberty interest without due process in violation of the Fourteenth Amendment Due Process Clause when they ceased providing him with confidential information that was provided to the rest of the Board. He asserts that he was then forced to make decisions on school-related matters without full information, which embarrassed him and damaged his reputation. The Court dismissed Earnest's original complaint on the grounds that he had not pled facts plausibly suggesting he was deprived of a liberty interest. However, because it believed he may be able to plead facts showing he had a property interest in serving on

the Board, the Court allowed him to amend his pleading. His First Amended Complaint is now before the Court.

## II. Standard for Dismissal

When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts as true all allegations in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To avoid dismissal under Rule 12(b)(6) for failure to state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This requirement is satisfied if the complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level. *Bell Atl.*, 550 U.S. at 555; *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl.*, 550 U.S. at 556). "[I]t is not enough for a complaint to avoid foreclosing possible bases for relief; it must actually suggest that the plaintiff has a right to relief . . . by providing allegations that 'raise a right to relief above the speculative level.'" *Concentra Health Servs.*, 496 F.3d at 777 (quoting *Bell Atl.*, 550 U.S. at 555).

## III. Facts

In his First Amended Complaint, Earnest repeats all the allegations in his original complaint, and adds a number of new ones. The Court recaps the original allegations by quoting its April 30, 2018, order granting the defendants' first motion to dismiss, then it explains the new allegations added in the First Amended Complaint. Again, the Court is careful to limit

these facts to those actually pled to the exclusion of the additional unpled facts asserted in the briefs.

> Earnest was elected to and began serving his four-year on the Board . . . in April 2015. At all times relevant to this lawsuit, defendant Jon Fulton was president of the Board, and defendant Andrew D. Johnson was superintendent of the district.
> On February 23, 2017, the Board informed Earnest that he would no longer have access to confidential information provided to the rest of the Board. The restriction was of indefinite duration and was to continue until Fulton and Johnson, in their discretion, decided to end it. Without confidential information regarding the district's finances and personnel matters, Earnest was unable to make informed decisions about important questions before the Board and consequently was unable to effectively discharge his duties as a Board member or represent the constituents who elected him. He was also embarrassed and humiliated and suffered emotional distress because he was called on to vote on matters about which he was not fully informed. No hearing was held either before or after the restriction on confidential information was imposed. Earnest was not formally removed from the Board.

Mem. & Order 2-3 (Doc. 21).

In the First Amended Complaint, Earnest adds additional allegations. He first enumerates the duties of Board members. He also describes how other Board members had electronic access to important Board documents organized by topic, whereas Earnest either (1) received the documents piecemeal via multiple emails, not organized by topic and often not in time for him to review them before a Board meeting, or (2) could pick up an organized hard copy of the documents within the two days before the Board meeting, which is often impossible for him to do. In any case, no student records were provided to Earnest regardless of how he received the documents. This lack of information "materially and significantly defeated" his ability to perform his functions as a Board member. 1st Am. Compl. ¶ 5. Earnest also alleges that the defendants unsuccessfully sought to have the Regional Superintendent discharge him from the Board. It further publicly censured him for some reason not revealed in the record.

3

The Board's actions damaged Earnest's reputation and hurt both his chances of re-election and his real estate development business because governmental units in Jasper County are hesitant to cooperate with him.

As with his original Complaint, Earnest alleges in Count I of his First Amended Complaint that by restricting him from receiving confidential information without conducting a hearing before imposing the restrictions, he was deprived of a liberty interest in effectively serving his constituents. In Count II he seeks a declaration that stripping him of his ability to perform in his elected office deprived him of his liberty interest in serving on the Board. He asserts these deprivations occurred without the appropriate procedures in violation of the Fourteenth Amendment Due Process Clause. Despite the Court's suggestion in its April 30, 2018, order that Earnest might be able to plead a property interest in his Board seat, he has not attempted to expressly plead such an interest.

The defendants ask the Court to dismiss Earnest's First Amended Complaint because it has not cured the flaws present in his original Complaint. Specifically, the defendants maintain that Earnest has not alleged a liberty interest protected by the Fourteenth Amendment, that there is an adequate post-deprivation state law remedy that would provide due process, and that the matter presents a political question that the Court should refrain from considering. Earnest suggests he was deprived of his liberty interest in pursuing his occupation as an effective Board member, although he was not technically removed from the post, and was defamed by the Board's public actions.

**IV. Analysis**

    A. <u>Protected Liberty or Property Interest</u>

In its April 30, 2018, order, the Court focused on the necessity of having a cognizable

liberty or property interest taken from him before a plaintiff can establish a procedural due process claim under the Fourteenth Amendment. *See Zinermon v. Burch*, 494 U.S. 113, 125 (1990); *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013). "To establish a violation, the plaintiff must show that he or she was deprived of a liberty or property interest at issue in the case." *Manley v. Law*, 889 F.3d 885, 890 (7th Cir.), *reh'g denied* (June 8, 2018). The Court further reviewed that, in order to establish a liberty interest based on damage to reputation, a plaintiff must establish more than just that; damage to reputation alone is not a protectable liberty interest in and of itself. *Paul v. Davis*, 424 U.S. 693, 712 (1976). Only when the reputation damage is accompanied by an "alteration of legal status, such as government deprivation of a right previously held" does a liberty interest arise. *Hinkle v. White*, 793 F.3d 764, 768 (7th Cir. 2015) (internal quotations omitted). "Defamation alone, even if it renders it 'virtually impossible for the [individual] to find new employment in his chosen field,' . . . is not enough to invoke the procedural safeguards of the Fourteenth Amendment." *Hinkle*, 793 F.3d at 770 (quoting *Townsend v. Vallas*, 256 F.3d 661, 670 (7th Cir. 2001)).

In its earlier order, the Court found that Earnest had not pled facts plausibly suggesting he had a liberty interest in effectively serving his constituents by his service on the Board. It further found that Earnest had not pled facts suggesting that any embarrassment or reputational loss was accompanied by a change in his legal rights or status such that it would constitute deprivation of a liberty interest.

Earnest's new allegations in his First Amended Complaint that the defendants' withholding Board information from him "materially and significantly defeated" his ability to perform his functions as a Board member could be construed to plausibly suggest he has been effectively deprived of his right to serve on the Board, which he is guaranteed by state law by

5

virtue of his election. *See* 105 ILCS 5/9-5 & 10-10 (2017); *Manley v. Law*, 204 F. Supp. 3d 1019, 1026 (N.D. Ill. 2016) (noting protectable property interest in seat on Board of Education), *aff'd*, 889 F.3d 885 (7th Cir.), *reh'g denied* (June 8, 2018). This could conceivably amount to a change in legal status as a Board member or a deprivation of a property right to a Board seat if the facts show that Earnest was effectively prevented from serving on the Board by the defendants' conduct. For this reason, Earnest's complaint is not subject to dismissal at the pleading stage for failure to state a protected interest.

As for the defendants' other two arguments for dismissal, neither has merit.

B. Due Process

The defendants argue that Earnest was provided all the process he was due because he was given advance notice that he would not receive confidential Board information and an opportunity to be heard. They argue he is not entitled to a pre-deprivation hearing because the Board does not have a standard process for restricting access to information, and that he has adequate post-deprivation remedies, namely, a state tort suit for defamation or a grievance to the Board as a whole.

Due process "is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972); *accord Doherty v. City of Chi.*, 75 F.3d 318, 323 (7th Cir. 1996). However, a "fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Doherty*, 75 F.3d at 323. The process due with any particular deprivation is a matter of balancing multiple factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and

> finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). If state law provides an adequate remedy for the wrong alleged, a plaintiff may not bring a claim under the Due Process Clause. *Parratt v. Taylor*, 451 U.S. 527, 543-44 (1981) (noting state tort claim procedure provided adequate remedy for deprivation of property), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327, 330-31 (1986),

The defendants have not convinced the Court that Earnest was provide the process due considering the foregoing balancing test. Interestingly, they have not identified any of the specific relevant factors in the *Mathews v. Eldridge* balancing test: (1) the private interests affected by the information restriction (*e.g.,* the Board's need to restrict information to Earnest, Earnest's need to have it, and any other third-party interests that may be involved), (2) the risk of erroneously keeping information from Earnest in light of the value of providing different procedural safeguards, and (3) the burden of providing a different process to Earnest. Instead, the defendants simply identify the procedures available to Earnest.

The Court is not convinced those procedures were constitutionally adequate. Earnest pleads that he was provided no opportunity to be heard prior to the implementation of the information restriction. As for the post-deprivation process suggested by the defendants as adequate, a defamation suit might provide sufficient process for reputational harm, but it would not allow Earnest any opportunity to be heard on the issue of being prevented from serving in his elected office. Furthermore, the defendants point to no official mechanism set up for a Board member to raise before the entire Board a concern like Earnest's: *ultra vires* action by the Board president and superintendent to restrict a Board member's access to Board information.

7

*See Duda v. Board of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1061 (7th Cir. 1998) (noting only Illinois school boards, not school officials, have authority to make school policy). In the absence of any formal and/or written grievance procedure, like the prisoner tort claim procedures in *Parratt*, the Court cannot say as a matter of law that a post-deprivation grievance to the Board would have satisfied the balancing test in *Mathews v. Eldridge*. While one can always complain to someone in power about a decision, the ability to complain does not always constitute due process, especially if there is no established procedure for how a complaint will be handled.

In sum, the defendants have not convinced the Court that Earnest was provided an appropriate post-deprivation remedy because he could sue for defamation or because he could grieve the matter to the full Board.

C. Political Question

Finally, the defendants ask the Court to dismiss this case because it presents a nonjusticiable political question.

> The political-question doctrine "identifies a class of questions that either are not amenable to judicial resolution because the relevant considerations are beyond the courts' capacity to gather and weigh, . . . or have been committed by the Constitution to the exclusive, unreviewable discretion of the executive and/or legislative—the so-called 'political'—branches of the federal government.

*Judge v. Quinn*, 624 F.3d 352, 358 (7th Cir. 2010) (quoting *Miami Nation of Indians of Ind., Inc. v. United States Dep't of the Interior,* 255 F.3d 342, 347 (7th Cir. 2001)). The Court should consider a variety of factors to see if case presents a political question:

> [A] textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect

8

> due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Baker v. Carr*, 369 U.S. 186, 217 (1962). These six factors can be condensed and summarized into three general justifications for declining to hear a case on the merits: (1) the court lacks authority to resolve that issue because it has been committed to another political department, (2) the court lacks competence to decide the dispute, and (3) prudential considerations counsel against hearing the issue. *Zivotofsky v. Clinton*, 566 U.S. 189, 203-04 (2012) (Sotomayor, J., concurring). If a claim presents a *bona fide* political question, the Court lacks authority to hear it. *Judge*, 624 F.3d at 357-58.

As a preliminary matter, the political question doctrine is designed to govern the relationship between the federal judiciary and the other branches *of the federal government*, not other state or local governmental entities. *Baker*, 369 U.S. at 210 (noting the doctrine is "primarily a function of the separation of powers" envisioned by the United States Constitution). Thus, the political question doctrine does not apply in this case, where the Judicial Branch is called on to review the actions of a municipal board that implicate no interests of the Legislative or Executive Branches of the federal government. Indeed, "where state action (or, as here, inaction) infringes rights guaranteed by the federal Constitution, the federal courts have the power to hear cases and fashion remedies to redress the constitutional wrong." *Judge*, 624 F.3d at 359. The same holds true for municipal actors whose conduct infringes on federal constitutional rights.

Even if the political question doctrine could apply to municipal actions devoid of federal political questions, the Court finds it would not apply in this case. The Court is clearly

9

competent to review municipal actions using well-established constitutional due process standards to determine whether an individual's constitutional rights have been infringed. It does not require any kind of discretionary policy-making that has been committed to some other authority. On the contrary, this case presents a run-of-the-mill question of whether due process was provided by a municipality to an individual who asserts the deprivation of a protected interest, a question federal courts routinely decide. Thus, the Court declines to dismiss this case under the political question doctrine.

## V. Conclusion

For the foregoing reasons, the Court **DENIES** the defendants' motion to dismiss (Doc. 23).

**IT IS SO ORDERED.**
**DATED:   September 5, 2018**

> s/ J. Phil Gilbert
> **J. PHIL GILBERT**
> **DISTRICT JUDGE**