UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| JERRY L. EARNEST, | |
|---|---|
| Plaintiff, | |
| v. | Case No. 17-cv-1380-JPG-GCS |
| BOARD OF EDUCATION OF JASPER COUNTY COMMUNITY UNIT SCHOOL DISTRICT NO.1; ANDREW D. JOHNSON, Superintendent; Board of Education Members: JON FULTON, President; GORDON MILLSAP, Vice President; HOLLY FARLEY, Secretary; MANDY RIEMAN; MELISSA STANLEY; and ROB STREET, | |
| Defendants. | |

## MEMORANDUM AND ORDER

This matter comes before the Court on the defendants' motion for summary judgment (Doc. 41). Plaintiff Jerry L. Earnest has responded to the motion (Doc. 49), and the defendants have replied to that response (Doc. 50). The Court also considers Earnest's motion for sanctions (Doc. 45), to which the defendants have responded (Doc. 51).

Earnest, an elected member of the Board of Education of Jasper County Community Unit School District No. 1 ("Board"), filed this lawsuit claiming that the defendants—the Board, School Superintendent Andrew D. Johnson, and Board members John Fulton (president), Gordon Millsap, Holly Farley, Mandy Rieman, Melissa Stanley, and Rob Street—deprived him of a liberty interest without procedural due process in violation of the Fourteenth Amendment Due Process Clause. He claims they did this by refusing to provide him with confidential information that was provided to the rest of the Board, by seeking his discharge, and by censuring him. He claims this effectively deprived him of his elected position on the Board and damaged his reputation. Whether the defendants deprived Earnest of a protected liberty interest and, if so, whether he was accorded due process are the main questions before the Court in the pending summary judgment motion.

## I. Summary Judgment Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396.

The initial summary judgment burden of production is on the moving party to show the Court that there is no reason to have a trial. *Celotex*, 477 U.S. at 323; *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). Where the non-moving party carries the burden of proof at trial, the moving party may satisfy its burden of production in one of two ways. It may present evidence that affirmatively negates an essential element of the non-moving party's case, *see* Fed. R. Civ. P. 56(c)(1)(A), or it may point to an absence of evidence to support an essential element of the non-moving party's case without actually submitting any evidence, *see* Fed. R. Civ. P. 56(c)(1)(B). *Celotex*, 477 U.S. at 322-25; *Modrowski*, 712 F.3d at 1169. Where the moving party fails to meet its strict burden, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 322-26; *Anderson*, 477 U.S. at 256-57; *Modrowski*, 712 F.3d at 1168. A genuine issue of material fact is not demonstrated by the mere existence of "some

2

alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded [factfinder] could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252.

## II. Facts

Construed in the light most favorable to Earnest, the evidence and the reasonable inferences that can be drawn from it establish the following relevant facts for purposes of the pending summary judgment motion.[1]

Earnest was elected to and began serving his four-year term on the Board in April 2015. At that time, Earnest began receiving monthly Board packets or logs—information provided to Board members to inform them about the issues to be addressed at the subsequent Board meeting—using Dropbox, an internet storage platform where files can be shared with multiple users. All Board members had access to the Board's Dropbox account from which they could retrieve Board packets, including confidential information in those packets. In addition, each Board members had an official Board email account where he or she could send and receive communications regarding Board business.

In the summer of 2016, animosity arose between Earnest and other Board members after

---

[1] Rather than recounting the relevant facts in a logical fashion such that their relevance would be apparent, Earnest simply summarizes the deposition testimony of various witnesses. The Court has tried to discern the relevance of the information in the deposition summaries, but it is not the Court's function to organized Earnest's arguments for him. *See United States v. McClellan*, 165 F.3d 535, 550 (7th Cir 1999) (courts are not "in the business of formulating arguments for the parties"). Additionally, Earnest cites affidavits without any indication of where in the multi-page affidavits the relevant statement are. Because Earnest has failed to explain the relevance and/or location of the facts he sets forth, the Court finds he has waived any objection to the Court's inadvertently overlooking a relevant fact.

Earnest called Sam Knox, of the Illinois High School Association ("IHSA"), to inquire whether an eighth-grade student was allowed to participate in high school athletic team practices and to inform him that a coach's son had done so three years earlier. Knox investigated but found no violation. The student Earnest was concerned about was Fulton's nephew, the football coach's son. Although Earnest did not reveal the name of the student to Knox, he identified that student as the coach's son. On January 6, 2017, the student's mother filed a written complaint with Fulton because she believed Earnest had improperly disclosed information about her son to the IHSA (Doc. 42-5 at 17-24).

On January 9, 2017, without the approval of the Board, Fulton, defendant Stanley and an outside consultant for the District met with Regional Superintendent of Education Monte Newlin to discuss removing Earnest from the Board. The Regional Superintendent had the authority to involuntarily discharge a school board member from that position. However, in the circumstances, Newlin believed he did not have the authority to remove Earnest. In late February or early March, he informed Johnson and Fulton that he would not take any action.

On February 6, 2017, the Board received a request under the Illinois Freedom of Information Act ("FOIA") from "Jane Doe" seeking certain emails sent from Earnest's Board email account. In the process of responding to this FOIA request, Johnson, who is also the District's FOIA officer, came to believe that Earnest had emailed Board packets to former superintendent Andrew Pullen, former Board member Bill Flowers and Earnest's wife. Those packets included confidential information regarding students and district personnel, although the confidential information was not marked as such in the packets.

Evidence was also discovered showing that Earnest had emailed to Pullen, Flowers and his wife the unredacted complaint by the parent of the eighth-grade student mentioned above that identified the student by name. The parent learned of the alleged disclosure and asked the Board to

4

seek Earnest's dismissal from the Board.  In fact, Pullen never received an email containing the student's name, and Flowers received the email in question but did not open it.  Fulton posted a redacted version of the parent's letter on the District's website as part of the District's on-line disclosure of its FOIA request responses.  However, even redacted, the letter disclosed information from which the identity of the student could be deduced.

Upon discovering that Earnest had sent emails that included confidential information to people not on the Board, the Board, through its attorney, sent Earnest a letter dated February 23, 2017, stating, in pertinent part:

> It has recently come to light that you have willfully and purposefully disseminated confidential information to members of the general public regarding District students and employees that was provided to you due to your status as a School Board member. . . .
>
> Specifically, our firm is in receipt of indisputable evidence that you have shared with members of the general public confidential information relating to specific students and to the performance of specific staff members.  During the search and review for documents responsive to the aforementioned FOIA request, it was revealed that you have been forwarding (via blind copy) the monthly Board packet to Mr. Andy Pullen and Mr. Bill Flowers.  In addition, you blind copied Mr. Pullen and Mr. Flowers on un-redacted emails that included a complaint filed with the School Board by a parent which contained information that clearly identifies a student of the District.
>
> At the very least, the willful distribution of student information violates the *Illinois School Student Records Act*, 105 ILCS 10/1 *et* seq.  In addition, release of information regarding the performance of specific teachers and principals violates the *Illinois School Code*.  These actions taken by you leaves the Board vulnerable to legal action on multiple fronts.
>
> As a result, you will no longer be granted or provided access to confidential District information.  This includes rescinding your access to information via the District's Dropbox account.  This ban shall remain in effect until such time [as] the Board determines otherwise.  As a Board member, you must know that disseminating legally protected confidential information relating to students and faculty is not only potentially illegal, but also disruptive to the day-to-day operations of the District.
>
> With respect to any non-confidential information that you may need in order to perform your official duties as School Board member, such information will be provided to you

> in hard copy format via U.S. mail.
>
> Finally, please be advised that you are hereby directed to cease and desist from disseminating any confidential information that may be in your possession, either now or in the future.

2/23/17 Letter (Doc. 42-3 at 8-9). Earnest's access to his Dropbox account was, indeed, revoked on February 23, 2017. Thereafter, Earnest did not have access to confidential information provided to other Board members. Although the letter represents that the decision to withhold confidential information from Earnest was a Board decision, it was not pursuant to formal Board action but informal conversations with Board members, Johnson and the Board's counsel. Earnest did not attend the March 2, 2017, Board meeting at which this issue was discussed.

In a letter dated March 14, 2017, Fulton informed Earnest of a hearing on a motion to censure him for his disclosure of confidential information. The letter stated:

> This letter is official notice that at the Board of Education Meeting of March 16, 2017, the Board will consider a motion, in public session, to censure you for conduct in violation of the following policies:
>
> > 1. Policy 2:10, which provides that a Board member has no legal authority as an individual.
> >
> > 2. Policy 2:80 which sets forth a Board member's oath of office, which includes a promise to respect the privacy of students and employees, to recognize that a Board member has no legal authority as an individual, and to abide by majority decisions of the Board while retaining the right to seek changes in such decisions through ethical and constructive channels.
> >
> > 3. Policy 2:140, regarding communications to and from the Board, which provides that Board members will not take private action that might compromise the Board or District.
>
> Specifically, your behavior includes the following:
>
> > 1. You independently and without authorization from the Board of Education released confidential personnel and student information to multiple members of the community via your School District email account which has now compromised the Board and the District.

You will have an opportunity to address the Board on this matter at the March 16th meeting.

3/14/17 Letter (Doc. 42-1 at 32). The letter attached the proposed statement of censure, which condemned Earnest's actions and apologized to the community. The proposed censure further asked Earnest to resign, and stated that if he refused, the Board would ask the Regional Office of Education to review his conduct to see if he should be removed from office (Doc. 41-2 at 33).

Several hours before the March 16 hearing was scheduled to begin, Earnest informed the Board's attorney he would not be attending the meeting and asked that the censure agenda item be postponed until he receives more specific, advanced notice of the alleged policy violations and a further investigation could be done (Doc. 42-5 at 10-12). In response, the Board postponed the censure measure. Earnest did not attend the March 16, 2017, Board meeting.

In a letter dated April 12, 2017, Fulton again advised Earnest of the policies he was alleged to have violated. Fulton also informed Earnest that the censure measure would be addressed at the April 20, 2017, Board meeting and that Earnest would have an opportunity at that meeting to provide an explanation or evidence regarding the allegations against him. The letter again attached the proposed censure (Doc. 42-1 at 35-38).

Two days before the Board meeting, Earnest asked Johnson to allow him two to four hours at the meeting to make a PowerPoint presentation to the Board in his defense (Doc. 42-5 at 14). The following day, Johnson responded that he would recommend to the Board to refuse Earnest the two- to four-hour time period he requested and instead to give him a reasonable opportunity to respond to the censure motion. Johnson anticipated Earnest's

response should take no more than ten or fifteen minutes to address the narrow issue of whether he improperly disclosed confidential information. Johnson also told Earnest he would be permitted to submit a written response and that Johnson would distribute it to the Board before the meeting for its consideration (Doc. 42-5 at 15-16).

Earnest provided some written documents in his defense, but several hours before the Board meeting was scheduled to begin, he informed the Board's counsel that he might miss the meeting because he had gotten out of a doctor's appointment later than expected (Doc. 40-1). He did not ask for the hearing to be postponed or rescheduled. Earnest did not attend the Board meeting, but the Board considered his written submissions. The Board voted to deny Earnest's requests for two to four hours and to make a PowerPoint presentation, and voted to approve the censure motion. Johnson sent Earnest a copy of the censure on April 26, 2017 (Doc. 42-1 at 43-44).

On April 28, 2017, Fulton again asked Regional Superintendent Newlin to remove Earnest from the Board, and Newlin again refused.

After Earnest missed the March 3, March 17 and April 20, 2017, Board meetings, he attended and participated in every Board meeting thereafter for the next seventeen months. He did not have access to confidential information in the Board packets for those meetings, but he was able to vote on more than 367 matters before the Board. He only abstained twice, and he only voted "no" based on the lack of information ten times at the most. After Earnest's Dropbox access was terminated, the Board did not reexamine that decision because the subject was not ever again brought before the Board. Further, Earnest was only allowed to review the minutes of closed Board meeting sessions under the supervision and was not allowed to copy them. He has obtained some Board documents through Freedom of Information Act requests.

8

The Board's actions in connection with Earnest have exacerbated his preexisting post traumatic stress disorder and have negatively impacted his mental health. As a consequence, he will require counseling going forward. He has also been viewed with suspicion in the community, has been stopped by the police for a questionable reason, has been called into a meeting by his church leaders, and has had trouble dealing with other government agencies as a consequence of the defendants' actions.

Earnest filed this lawsuit on December 22, 2017. In Count I of his First Amended Complaint, Earnest asserts that by restricting him from receiving confidential information without a hearing, the defendants "materially and significantly defeated" his ability to perform his functions as a Board member. 1st Am. Compl. ¶ 5. He further asserts that the Board's actions, including publicly censuring him and seeking his discharge, damaged his reputation and hurt both his chances of re-election and his real estate development business because governmental units in Jasper County are hesitant to cooperate with him. He believes that by these actions, the Board deprived him of a liberty interest without procedural due process in violation of the Fourteenth Amendment Due Process Clause. In Count II he seeks a declaration that stripping him of his ability to perform in his elected office deprived him of his liberty interest in serving on the Board.

The defendants ask the Court for summary judgment on the grounds that Earnest cannot show he was deprived of a liberty interest protected by the Fourteenth Amendment and that, if he was, he received all the process that he was due. Specifically, the defendants argue that Earnest had no right to the confidential information withheld from him, only to the elected position of Board member, which he was able to substantially perform even without the confidential information. They further argue that Earnest received notice of the Board's grievances against him as well as an opportunity to be heard before the Board, and that the hearing offered was adequate to satisfy constitutional

9

standards. They also argue that Earnest waived any due process claim by failing to attend the hearing offered to him. Finally, they argue that the claims against the defendants in their individual capacities are duplicative of the claims against them in their official capacities.

In his response, Earnest maintains that withholding documents prevented him from performing his role as a Board member and that the public censure by the Board defamed him and damaged his reputation. He complains that he was never informed of the specific allegations against him and was required to carry the burden of proof to disprove unspecified misconduct. He contends a pre-deprivation hearing would have provided him a meaningful opportunity to be heard, and that the April 20 hearing was a sham.

### III. Analysis

As a preliminary matter, the Court notes that its job in this case is not to determine whether the defendants' actions were administratively wise or were warranted by Earnest's conduct. The only question this Court must answer is whether Earnest was deprived of a constitutionally protected interest and, if so, whether he was provided due process in connection with that deprivation. This inquiry is complicated because of the shifting theories in this case. At times, Earnest claims that the decision to withhold confidential information from him was the deprivation; at other times, he claims it was the censure itself or the unsuccessful requests to remove him from the Board. He also seems to shift between asserting a liberty or property interest deprivation, although he only pled the deprivation of a liberty interest in the First Amended Complaint. The Court will attempt to bring some clarity to its discussion of the relevant issues.

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. 14. This clause encompasses the guarantee of fair procedures before an individual is deprived of a protected liberty or property interest.

*Zinermon v. Burch*, 494 U.S. 113, 125 (1990). "To establish a violation, the plaintiff must show that he or she was deprived of a liberty or property interest at issue in the case." *Manley v. Law*, 889 F.3d 885, 890 (7th Cir. 2018). The plaintiff must also show that he was deprived of that interest without due process. *See Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013). Thus, "[t]he first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'" *American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 59 (1999). If there was such a deprivation, the Court then must ask whether the process accorded was appropriate. *Id.*

    A.    <u>Protected Liberty or Property Interest</u>

Earnest did not have a constitutionally protected right to confidential information, to be free of surreptitious efforts to remove him from the Board, or to be free from censure. Nor does he have a protected interest in feeling like he was treated fairly by other members of the Board, in his own emotional well-being, or in others' compliance with Board policy or procedural rules. *Manley v. Law*, 889 F.3d 885, 891-93 (7th Cir. 2018). Indeed, none of those asserted rights are protected because they are not founded in state or federal positive law and are not freestanding substantive entitlements. *See id.* at 891. Thus, Earnest's claim rises or falls on the theory that the defendants deprived him of a liberty interest because they damaged his "good name, reputation, honor, or integrity." *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971) ("Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.").

However, as the Court has noted earlier in this case, it is well settled that damage to reputation alone is not a protectable liberty interest. *Paul v. Davis*, 424 U.S. 693, 712 (1976). "Rather, it is only the alteration of legal status, such as government deprivation of a right previously held, which, combined with the injury resulting from the defamation, justif[ies] the invocation of procedural

11

safeguards." *Hinkle v. White*, 793 F.3d 764, 768 (7th Cir. 2015) (internal quotations omitted). In the employment context, this is often called the "stigma plus" test. *Mann*, 707 F.3d at 878. "Defamation alone, even if it renders it 'virtually impossible for the [individual] to find new employment in his chosen field,' . . . thus is not enough to invoke the procedural safeguards of the Fourteenth Amendment." *Hinkle*, 793 F.3d at 770 (quoting *Townsend v. Vallas*, 256 F.3d 661, 670 (7th Cir. 2001)). The Court of Appeals for the Seventh Circuit has found "stigma plus" test helpful in non-employment situations as well. *See Dupuy v. Samuels,* 397 F.3d 493, 509-10 (7th Cir. 2005).

Although his reputation may have been damaged by the defendants' actions, the evidence before the Court does not show that Earnest suffered any change in legal status, the "plus" part of the "stigma plus" test. It is clear that any reputational harm Earnest suffered which lessened his chances of getting reelected or made it difficult for him to work with other government agencies did not work a change in his legal status. He did not have a prior right to reelection or to cooperative relations with other government entities.

Earnest suggests his legal status changed because he was no longer a functioning Board member, a position to which he had a legal right by virtue of his election to the position. However, although the Board sought his official removal from the Board at least twice, he was *not* removed from the Board. To the extent he argues he was effectively removed when he was refused access to confidential information, the evidence shows he was somewhat impaired in his abilities to function as a Board member, but the level of impairment did not rise to a level where it could be said he was effectively removal from his position. No evidence suggests that anything other than limited confidential information about finances or about specific students and staff were withheld from him. Earnest received virtually all other information, and no evidence suggests the information he received was in disarray or in a form where he was unable to appreciate its substance in preparation for Board

12

meetings. In addition, he was able to attend closed and open sessions of Board meetings—and after April 20, 2017, he attended seventeen consecutive meetings—and to participate in the discussions that occurred at those meetings. He only lacked necessary information for 10 out of more than 300 votes for which he was present after his Dropbox access was revoked. No reasonable factfinder could find, based on these facts, that Earnest was effectively removed from his position on the Board. Therefore, he cannot establish the deprivation of a liberty interest under the "stigma plus" test.

To the extent Earnest frames his right to serve on the Board as a property interest, *see* 105 ILCS 5/9-5 & 10-10 (2017); *Manley v. Law*, 204 F. Supp. 3d 1019, 1026 (N.D. Ill. 2016) (noting protectable property interest in seat on Board of Education), *aff'd*, 889 F.3d 885 (7th Cir. 2018), the Court finds for the reasons above that he was not deprived of that property interest.

B. Due Process

Even if Earnest had been deprived of a liberty or property interest either by being denied confidential information provided to other Board members or by being censured, the Court finds he was provided due process. Due process "is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972); *accord Doherty v. City of Chi.*, 75 F.3d 318, 323 (7th Cir. 1996). However, fundamental requirements of due process are reasonable notice and a meaningful opportunity to be heard. *Dietchweiler by Dietchweiler v. Lucas*, 827 F.3d 622, 628 (7th Cir. 2016). The process due with any particular deprivation, including whether the process occurs before or after the deprivation, is a matter of balancing multiple factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Earnest had reasonable notice of the reasons the Board stopped providing him confidential information and censured him. This notice was provided in the Board attorney's February 23, 2017, letter as well as Fulton's March 14 and April 12, 2017, letters, which advised Earnest of the conduct the Board thought was wrongful. It is true, the letters could have provided more specifics about the precise disclosures the Board asserted were improper, but the descriptions given were certainly sufficient to alert Earnest to his conduct the Board found objectionable. They also informed Earnest of the policies he was alleged to have violated by that conduct and the action the Board was contemplating in response to the alleged violations. Together, the letters provided constitutionally adequate notice. Additionally, the Board's postponing consideration of the matter from its March 16 to April 20 meeting provided Earnest a reasonable time to formulate a response to the Board's allegations.

With respect to the decision to revoke Earnest's Dropbox access on February 23, 2017, in light of the *Mathews v. Eldridge* factors, Earnest was provided an adequate hearing after that decision was made. Earnest had an interest in being fully informed about the issues coming before the Board by receiving confidential information. Not having that information risked preventing him from considering intelligently and responsibly certain matters he was elected to consider. On the other hand, the Board had an interest in keeping student, teacher and principal records confidential, as required by the Illinois School Student Records Act, 105 ILCS 10/6, and the Illinois School Code, 105 ILCS 5/24A-7.1. If it did not, it could be liable for that failure and risked losing federal funding. Additionally, the students and staff referenced in the confidential records had strong interests in their own privacy. Furthermore, the Board had an interest in maintaining the community's trust that it would keep confidential information secret.

When it found evidence that Earnest had breached the Board's duties by disseminating

confidential information to individuals not entitled to see it, the Board acted quickly to prevent Earnest from further disseminating confidential information by terminating his access to that information. It then offered him a hearing at the second Board meeting after the discovery. The trade-off was that Earnest did not have confidential information in preparation for those two meetings (three, after the matter was postponed), but the Board was assured that Earnest would not further breach confidentiality obligations before the hearing. It is true that holding a Board meeting before revoking Earnest's Dropbox access would have been possible, but it would have been logistically difficult to schedule a meeting at which a quorum would have been available, it would have required an additional administrative burden, and it would not likely have given Earnest adequate time to prepare a defense to the allegations. Indeed, Earnest needed more than two days to prepare for the hearing originally set for March 16, 2017. There is, in fact, no evidence that a quicker hearing would have offered any additional fact-finding accuracy to either Earnest or the Board, especially in light of the fact that Earnest admitted that he did, in fact, disclose at least some confidential information.[2] In all, the April 20, 2017, meeting provided Earnest an opportunity to respond to reasons the Board withheld confidential information from him.

The evidence indicates that the opportunity was meaningful. While Earnest was not allowed to respond in the manner he preferred, the Board voted to allow him ten to fifteen minutes, a reasonable amount of time for a limited Board agenda item, to present an oral response. Because Earnest was not present at the meeting, he did not present his position that this amount of time was insufficient. Earnest was further permitted to submit as much as he wanted in writing, which the

---

[2] In his brief, Earnest denies that he emailed any confidential information, but in his deposition, he admitted that he disclosed the January 6, 2017, complaint from the student's mother in which she named the student. Earnest Dep. 20:5-13 (Doc. 42-1).

Board considered. That he was not allowed to make a two- to four-hour PowerPoint presentation did not render the opportunity to respond a sham when he had alternative ways of stating his case. The Court has found no caselaw holding that the Constitution requires the kind of opportunity to respond Earnest wanted, so the Court finds the hearing was adequate. Furthermore, Earnest's failure to attend the April 20, 2017, hearing without asking that it be postponed forecloses his due process claim to the extent he objects to the sufficiency of the hearing. *See Carmody v. Bd. of Trustees of Univ. of Ill.*, 747 F.3d 470, 479 (7th Cir. 2014) (plaintiff's "decision to bow out of the post-termination hearing—a decision he made freely—forecloses his due process claim to the extent it is premised on that hearing").

The April 20, 2017, hearing also provided a pre-deprivation opportunity for Earnest to respond to the potential censure, which he claims caused him reputational harm. Again, for the reasons set forth above, Earnest received reasonable notice and was offered a meaningful opportunity to be heard before the censure was adopted. He cannot now complain that he did not receive due process before the Board approved the censure.

    C.    Other Arguments

The Court has concluded that no reasonable fact-finder could find Earnest was deprived of a constitutionally protected interest, and even if it had, Earnest was provided all the process due in connection with any such deprivation. Thus, there is no need to address the defendants' other arguments in favor of summary judgment.

**IV.**    **Motion for Sanctions**

The Court turns to Earnest's motion for default judgment as a sanction (Doc. 45). He bases this request on evidence that a witness aligned with the defendants attempted to intimidate and tamper with a witness aligned with Earnest at a restaurant in a local bowling alley. He cites as authority for

such a sanction award the inherent power of the Court to manage judicial proceedings. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 46-50 (1991); *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016), *cert. denied*, 138 S. Ct. 116 (2017).

The defendants argue in response that, even if true, the alleged conduct does not rise to the level of witness tampering. They further argue that the alleged conduct does not justify sanctions because no evidence suggests the defendants are responsible for the offensive conduct and because, in any case, the sanction of default judgment is too harsh.

"[A] court has the inherent authority to manage judicial proceedings and to regulate the conduct of those appearing before it, and pursuant to that authority may impose appropriate sanctions to penalize and discourage misconduct." *Ramirez*, 845 F.3d at 776. However, before a court may dismiss a case as a sanction, it must find "that the responsible party acted or failed to act with a degree of culpability that exceeds simple inadvertence or mistake." *Id.* Any sanction imposed under a court's inherent authority "must be premised on a finding that the culpable party willfully abused the judicial process or otherwise conducted the litigation in bad faith." *Id.* (citing *Chambers*, 501 U.S. at 50)

The Court declines to sanction the defendants for the conduct Earnest alleges. There is no evidence suggesting any defendant had any responsibility or culpability for the witness's conduct, even if the witness did everything Earnest alleges. No evidence suggests any defendant directed the witness to behave as he did or, indeed, had any control whatsoever over that witness's conduct. There is simply no evidence tending to indicate any defendant willfully abused the judicial process or acted in bad faith in connection with the witness's conduct. The Court will therefore deny the motion for sanctions (Doc. 45).

17

## V. Conclusion

For the foregoing reasons, the Court **GRANTS** the defendants' motion for summary judgment (Doc. 41), **DENIES** Earnest's motion for sanctions (Doc. 45), and **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED:   March 4, 2019**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**
